**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES M. WILSON, | ) | CASE NO. 3:20-CV-00820-JZ |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| v. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| ANDREW SAUL, | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | CARMEN E. HENDERSON |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, James M. Wilson ("Wilson" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter was referred to me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, I RECOMMEND that Claimant's Statement of Error be OVERRULED and that the Commissioner's decision be AFFIRMED.

**II. Procedural History**

On April 21, 2017, Claimant filed an application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"), alleging a disability onset date of April 10, 2014. (ECF No. 14, PageID #: 157). Claimant later amended his onset date to October 24, 2017. (ECF No. 14, PageID #: 311). Wilson claimed that he was disabled due to back injury, arthritis, vision impairment, and high blood pressure. (ECF No. 14, PageID #: 156). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 14, PageID #: 218). On September 4, 2018, the ALJ held a hearing,

1

during which an impartial vocational expert and Claimant, who had representation by counsel, both testified. (ECF No. 14, PageID #: 129). On January 9, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 14, PageID #: 91). The ALJ's decision became final on February 20, 2020, when the Appeals Council declined further review. (ECF No. 14, PageID #: 47).

On April 16, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 15, 17). Claimant asserts the following assignments of error:

> (1) [W]hether the [ALJ] improperly ignored evidence that the Plaintiff has a disability and is entitled to benefits; and
>
> (2) [W]hether the ALJ failed to adhere to the Defendant's own published standards and regulations in [her] failure to properly apply SSR 96-9p.

(ECF No. 15, PageID #: 525).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant alleges limitations resulting from back pain and limited mobility that he indicates restrict his ability to work. He testified that he could not sit or stand for more than a couple of minutes because his back would hurt and he was unable to walk for even a block. He reported that his back pain started in 2016 and that he had only had one injection so far that provided an 80% reduction in his pain. The claimant stated that he used a cane for ambulation and balance. He said he had good days and bad days but was unable to do anything strenuous. He reported he still had a valid driver's license and was able to drive. He said he was unable to do chores and could not sweep the floor due to the motion causing pain in his back. (Hearing testimony).

(ECF No. 14, PageID #: 87).

> During the hearing, the ALJ asked the vocational expert to
>
>> assume a hypothetical individual with the same age, education, and vocational profile as the claimant with the residual functional capacity to perform light work except he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he can never climb ladders, ropes, or scaffolds; he should avoid workplace hazards such as unprotected heights and moving mechanical parts; he should have a sit/stand option wherein he can change position every 30 minutes for one to two minutes in the immediate vicinity of the workstation.

(ECF No. 14, PageID #: 149–50). The vocational expert testified that the hypothetical person would not be able to perform Claimant's past relevant jobs, but that the hypothetical person would be able to perform other jobs. (ECF No. 14, PageID #: 150). Specifically, the hypothetical person could perform work as a sorter, packer, or inspector. *Id.* The ALJ also asked how the individual's ability to work would be affected if the individual was off task greater than 20% of the workday, excluding scheduled breaks. (ECF No. 14, PageID #: 150–51). The Claimant's counsel questioned the vocational expert further. Specifically, if the individual could perform Claimant's past relevant work or any of the suggested jobs at the light exertional level (sorter, packer, or inspector) if the individual can only stand and walk two hours out of an eight-hour day and could sit for six hours of an eight-hour day. (ECF No. 14, PageID #: 151). The vocational expert testified that an individual who could only stand and walk for two hours of an eight-hour day would be considered to have a sedentary exertional level and that neither the Claimant's past relevant work nor the light exertional level jobs (sorter, packer, or inspector) would be available to the individual. (ECF No. 14, PageID #: 151–52). Counsel presented another hypothetical, asking the vocational expert about potential jobs if a hypothetical individual needed a cane for balance and ambulation. *Id.* The expert testified that the need to use a cane for balance and ambulation would still eliminate the job titles

of sorter, packer, or inspector. (ECF No. 14, PageID #: 152). However, the hypothetical individual could still obtain a job as an usher if the person was capable of standing in place with the cane for six hours of an eight-hour workday. *Id.*

Ultimately, the ALJ determined that the Claimant had the residual functional capacity to perform light work with additional limitations in that he could only: "occasionally climbs ramps and stairs, balance, stoop, kneel, crouch, and crawl. Claimant can never climb ladders, ropes, or scaffolds. He should avoid workplace hazards such as unprotected heights and moving mechanical parts. He should have a sit-stand option, wherein he can change positions, every 30 minutes, for one to two minutes, in the immediate vicinity of the workstation." (ECF No. 14, PageID #: 87). The ALJ determined that an individual with Claimant's age, education, work experience, and RFC would be able to perform the requirements of light unskilled occupations, such as

| Job Title / DOT Code | Nationwide |
|---|---|
| Sorter / 526.687-010 | 110,000 |
| Packer / 559.687-074 | 100,000 |
| Inspector / 222.687-042 | 50,000 |

(ECF No. 14, PageID #: 90). In her evaluation at Step 5, the ALJ stated:

> Pursuant to SSR 00-4p, the [ALJ] has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT). However, it is noted that the vocational expert testified that the DOT does not address a sit/stand option, breaks, time off-task, or absences allowed. The [ALJ] accepts the testimony of the vocational expert as it is based on his professional experience, education, and training. (Exhibit 16E).
>
> Based on the testimony of the vocational expert, the [ALJ] concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

(ECF No. 14, PageID #: 91).

B. Relevant Medical Evidence[1]

The ALJ also summarized Claimant's health records and symptoms:

> In November 2017, the claimant treated with Family Health Services due to a right sided lower back pain with a flare up a couple of days [ ] after he had helped to assemble a fireplace. He described the pain as stabbing, radiating to the right lower extremity, and worse with bending. Pain was noted over L5 with palpitation of the lumbar spine, slight swelling on the right was noted with spasms, range of motion was limited in flexion but not extension, straight leg raise was negative, and strength and tone were intact. The claimant was treated with Flexeril. (Exhibit 9F/12).
>
> In December 2017, the claimant treated with Dr. Sherif Zaky, M.D. due to complaints of low back pain with radiation down the right lower extremity to his foot that was intermittent. The claimant stated that when he had flare-ups in the past that he would go to the emergency room for an injection that would relieve him of the pain and allow him to continue working. He said the pain had worsened over the last year and he had tried physical therapy but that only provided minimal improvement in his pain. It was noted the last MRI in May 2017 showed no compression deformity or spinal stenosis, mild asymmetrical annular bulging at T11-T12, mild disc narrowing and mild broad-base annular bulging at L3-L4, moderate disc narrowing with mild to moderate asymmetrical posterior annular bulging more pronounced on the left with moderate L4-L5 neuroforaminal encroachment, mild anterior indentation of thecal sac at L4-L5, and facet joint arthrosis at L4-L5. (Exhibit 7F). Examination showed that the claimant was able to heel toe walk, positive Faber test right, positive straight leg raise right, tenderness on palpation to lumbar paraspinal muscles and S1, normal motor exam, intact reflexes, decreased sensory to pinprick at L4, L5, and S1 on the right, positive facet loading on the right, and pain with extension and range of motion. Diagnosis was lumbar radiculopathy, lumbosacral spondylosis, and chronic pain and the claimant was treated with pain relieving cream and Gabapentin. [] (Exhibit 7F).

---

[1] Due to the limited scope of Claimant's issues on appeal, the Court finds the ALJ's summary of facts sufficient here. This summary is not meant to be exhaustive. Additional facts are included in the analysis when necessary.

5

> In January 2018, the claimant underwent a right L4 and L5 transforaminal epidural steroid injection and at a follow-up visit, he reported 80% pain relief and improvement in functionality. He reported residual mild low back pain but noted the radicular symptoms, the numbness, tingling, and burning sensation all subsided. At his appointment he denied pain and weakness. Examination showed negative bilateral Faber test, negative straight leg raise test, no tenderness to palpation to lumbar paraspinal muscles and S1, normal motor exam, intact reflexes, decreased sensory to pinprick at L4, L5, and S1 on the right, negative facet loading, and no pain with extension and range of motion. (Exhibit 7F).
>
> When the claimant followed up with Family Health Services later in January 2018, he reported that he had been pain free since the epidural steroid injection, he was no longer taking Ibuprofen or Gabapentin, and he had no other concerns. (Exhibit 9F/8).
>
> In July 2018, the claimant reported left lower back pain instead of the previous right lower back pain. It was noted that he might have been favoring the right side and that led to left sided pain. He [stated] the pain was a 4–5/10, was worse with sitting too long, bending and twisting but he also declined a new injury or trauma. The claimant was offered muscle relaxer or steroid medication and he declined. He was then referred back to pain management and was told to do home exercises, stretches, and heat or ice. (Exhibit 9F/4).

(ECF No. 14, PageID #: 87–88).

### C. Opinion Evidence at Issue

#### 1. State Agency Medical Consultant, Dr. Lynne Torello, M.D.

Upon initial review, in May 2017, Dr. Torello opined that Claimant had the exertional limitation to occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. (ECF No. 14, PageID #: 171). Dr. Torello also opined that Claimant was capable of standing or walking six hours in an eight-hour work day, capable of sitting for six hours in an eight-hour work day, and had no limitations for pushing or pulling. *Id.* Dr. Torello found that Claimant had postural limitations and can occasionally stoop, kneel, crouch, crawl, climb ramps and stairs but can never climb ladders, ropes or scaffolds. (ECF No. 14, PageID #: 172). Dr. Torello did not find Claimant

to have a postural limitation for balancing. *Id.* Also, Dr. Torello opined that Claimant should avoid all exposure to unprotected heights, heavy hazardous machinery, and commercial driving because of his spine issues. (ECF No. 14, PageID #: 173).

The ALJ found Dr. Torello's opinion persuasive and that her suggested limitations were consistent with the nature, scope, and findings from the treatment record. (ECF No. 14, PageID #: 88–89).

### 2. State Agency Medical Consultant, Dr. William Bolz, M.D.

Upon reconsideration, in July 2017, Dr. Bolz opined that Claimant had the exertional limitation to occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. (ECF No. 14, PageID #: 193). Dr. Bolz opined that Claimant was capable of sitting for about six hours in an eight-hour workday. *Id.* Dr. Bolz found Claimant has postural limitations and could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. (ECF No. 14, PageID #: 194). Dr. Bolz found that Claimant could never climb ladders, ropes, or scaffolds. *Id.* In contrast to the initial disability determination, Dr. Bolz opined that Claimant was capable of standing and walking for a total of two hours. (ECF No. 14, PageID #: 193). With respect to Claimant's postural limitations, in addition to the limitations found by Dr. Torello, Dr. Bolz found that Claimant was occasionally limited in his ability to balance. (ECF No. 14, PageID #: 194). Finally, Dr. Bolz opined that Claimant did not have any environmental limitations. (ECF No. 14, PageID #: 194).

The ALJ found unpersuasive Dr. Bolz's opinion that Claimant was only able to stand or walk for two hours. (ECF No. 14, PageID #: 89). The ALJ determined that the record did not have sufficient evidence to support a limitation at the sedentary level.[2] *Id.* Specifically, the ALJ noted

---

[2] The Social Security Administration describes sedentary work to be work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and where "walking and standing are required occasionally." 20

that "there is one reference in the record that the claimant uses a cane, and there is not a prescription for the use of the cane anywhere in the medical record to show that it is medically necessary." *Id*. In addition, the ALJ noted that "[C]laimant's degenerative disc disease is classified as mild to moderate", that Claimant "declined treatment from his doctor in July 2018," and that Claimant has only received one steroid injection. *Id.*

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: degenerative disc disease lumbar and mild obesity. (20 CFR 404.1520(c) and 416.920(c)). []

    The claimant also has the nonsevere impairments of hypertension and hyperlipidemia. The [ALJ] finds that these impairments are not "severe" impairments within the meaning of the Social Security Act and Regulations because there is no evidence that these conditions have more than a minimal limitation on the claimant's ability to perform work-related activities. (20 CFR 404.1522 and 416.922 and SSRs 85-28).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climbs ramps and stairs, balance, stoop, kneel, crouch, and crawl. Claimant can never climb ladders, ropes, or scaffolds. He should avoid workplace hazards such as unprotected heights and moving mechanical parts. He should have a sit-stand option, wherein he can change positions, every 30 minutes, for one to two minutes, in the immediate vicinity of the workstation.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.696, and 416.696a).

---

C.F.R. § 416.967. Based on the exertional and postural limitations that were identified by Dr. Bolz, the ALJ considered Dr. Bolz's opinion as limiting Claimant to the sedentary level of exertion. (ECF No. 14, PageID #: 89).

(ECF No. 14, PageID #: 85–87, 90).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404,

Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal. The first assignment of error argues that the ALJ improperly ignored evidence that Claimant has a disability and is entitled to benefits. The second assignment of error argues that the ALJ failed to adhere to the Defendant's own published standards and regulations in her failure to properly apply SSR 96-9p, specifically focusing on the need for a "medically required hand-held assistive device." (ECF No. 15, PageID #: 525).

#### 1. Substantial Evidence Supports ALJ's Decision that Claimant is Not Disabled

Claimant's first assignment of error rests on the argument that the ALJ "chose to adopt the State Agency Medical doctor's opinion upon initial review, and reject the State Agency Medical doctor's opinion upon Claimant's reconsideration." (ECF No. 15, PageID #: 530). Specifically, Claimant objects to the ALJ's finding that Dr. Bolz's opinion was "insufficient" because Claimant believes that the medical opinion for reconsideration should be persuasive to the ALJ since the medical opinion for initial review had less evidence and was still found to be "persuasive." *Id.* Claimant draws his focus to the fact that Dr. Yoo's notation in the treatment record, that "claimant

10

uses a cane to ambulate," (ECF No. 14, Page ID #: 436) was made after the initial medical opinion by Dr. Torello was performed. (ECF No. 15, PageID #: 529). The Court notes that the timing of Dr. Yoo's treatment record is not significant since, as discussed below, the remainder of the treatment record and Dr. Yoo's own recommendation do not support the findings that Claimant medically requires an ambulatory aid.

At Step Four, the ALJ must determine Claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017[3]. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520(c), 404.1520(b)(2) ("The factors of supportability [] and consistency [] are the

---

[3] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520 for claims filed on or after March 27, 2017, such as here.

most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....")

Here, the ALJ provided an explanation of the persuasiveness of each of the State Agency medical consultations. Specifically, the ALJ explained why the initial medical opinion was found to be persuasive and also made clear why the medical opinion for Claimant's reconsideration was insufficient to support a limitation to the sedentary level. The ALJ states:

> [] We fully considered the medical opinions and prior administrative medical findings in your case as follows: when the claimant's record was reviewed by State Agency medical consultant, Dr. Lynne Torello, M.D. in May 2017, it was noted that the claimant was capable of performing work at the light exertional level with additional postural and environmental limitations. (Exhibits 1A and 2A). The limitations suggested by this source are persuasive and accounted for by the adopted residual functional capacity because they are consistent with the nature, scope, and findings from the treatment record.
>
> A later State Agency medical consultant, Dr. William Bolz, M.D. opined in July 2017 that the claimant was capable of work at the sedentary exertional level due to only being able to stand or walk for 2 hours. The claimant would also have postural limitations. (Exhibits 5A and 6A). The [ALJ] finds this opinion unpersuasive because there is insufficient evidence in the medical record to support a limitation to the sedentary level. There is only one reference in the record that the claimant uses a cane, and there is not a prescription for the use of the cane anywhere in the medical record to show that it was medically necessary. In addition, the claimant's degenerative disc disease is classified as mild to moderate, he declined treatment from his doctor in July 2018, and he has only had one steroid injection. (Exhibit 9F).

(ECF No. 14, PageID #: 88–89).

The ALJ highly regarded the consistency of the medical opinions when determining their respective persuasiveness. When analyzing Dr. Torello's opinion in July 2017, the ALJ found it to be consistent with the "finding from the treatment record." *Id.* In contrast, when the ALJ analyzed the consistency of Dr. Bolz's opinion in July 2018, she found that Dr. Bolz's findings were not

consistent with the rest of the treatment record and did not contain sufficient supportability. For example, on April 20, 2017, Claimant is seen by Dr. Matthew Petznick, D.O., for right lower back pain. (ECF No. 14, PageID #: 387). Upon physical examination, Dr. Petznick records that Claimant has a positive straight leg test but notes normal findings regarding Claimant's stability, strength, sensation, and gait. (ECF No. 14, PageID #: 387). Dr. Petznick then referred Claimant to neurosurgeon, Dr. Bo Yoo, M.D. (ECF No. 14, PageID #: 435). During an appointment with Dr. Yoo on June 15, 2017, Dr. Yoo noted that Claimant had a negative straight leg raise test on both legs and normal findings on Claimant's leg strength, coordination, and sensation. (ECF No. 14, PageID #: 436). The only abnormal notation on Dr. Yoo's assessment was that Claimant "uses a cane to ambulate." *Id.* However, as the ALJ appropriately reasoned, this notation does not align with the remainder of the physical exam, nor does it align with the rest of the treatment record. Even though Dr. Yoo notes in the physical exam that Claimant uses a cane to ambulate, Dr. Yoo does not include the need for a cane within the recommendation section of the record. (ECF No. 14, PageID #: 437). In fact, there was not a single recommendation from any provider that Claimant should be using a cane. (ECF No. 14, PageID #: 409, 437, 460, 464, 487, 493, 495, 497–500). Furthermore, instead of recommending an ambulatory aid, Dr. Yoo recommended "aggressive physical therapy" and "to push through the pain." (ECF No. 14, PageID #: 437). Dr. Yoo's goal for Claimant was for him to "try to return to full daily activities." *Id.* These recommendations are evidence that Claimant was fully capable of ambulating without a cane and therefore, the cane was not medically necessary. Moreover, the findings that Claimant's leg strength and coordination were normal (ECF No. 14, PageID #: 436) supports the ALJ's finding that Claimant did not have an exertional limitation that would limit his standing and walking to under two hours in an eight-hour workday. (ECF No. 14, PageID #: 193).

13

The ALJ's reasoning is further supported by the remainder of the treatment record. After being seen by Dr. Petznick and Dr. Yoo, Claimant began seeing providers at Family Health Services in September 2017. On September 1, 2017, Claimant reported that he finished 15 visits of the physical therapy that Dr. Petznick referred and that physical therapy did not help. (ECF No. 14, PageID #: 499). During this same visit, on September 1, Claimant had a normal physical exam except for impaired extension of his vertebral column. (ECF No. 14, PageID #: 499). On September 28, 2017, Claimant returned to Family Health Services for right sided lower back pain, where it was noted that Claimant had a normal exam, except that this time, he had a decreased range of motion on flexion of his vertebral column instead of extension. (ECF No. 14, PageID #: 497). Following this exam, Nurse Spasic recommended Claimant perform exercises at home and discussed back injections for pain but did not recommend the use of a cane or that Claimant should limit his standing or walking. *Id.* In November 2017, Claimant followed-up with Nurse Spasic, who recommended epidural injections to relieve the back pain, but did not recommend the use of a cane or that Claimant should limit the time he spent walking. (ECF No. 14, PageID #: 495). Upon referral from Nurse Spasic, Claimant met with pain management on December 11, 2017, where he was found to have a positive straight leg test on the right side and pain with extension. (ECF No. 14, PageID #: 463). Claimant received epidural pain injections on January 3, 2018. (ECF No. 14, PageID #: 467). One week later, Claimant reported more than an 80% relief from his pain and the provider recommended that the Claimant increase his activities as tolerated. (ECF No. 14, PageID #: 459-60). Again, there was no recommendation for the use of a cane or any limitation on Claimant's ability to walk or stand. *Id.* On January 23, 2018, Claimant returned to Nurse Spasic for a follow-up visit and it was noted on the exam that Claimant had full range of motion, a steady gait, and no back pain. (ECF No. 14, PageID #: 493).

Around six months later, during July 2018, Claimant saw Nurse Spasic again for back pain. (ECF No. 14, PageID #: 487). Other than the pain over his left lower back, he had a normal physical exam. *Id.* During this July visit, Claimant declined prescriptions for both a steroid and a muscle relaxer. *Id.* Ultimately, Nurse Spasic recommended another epidural injection and for Claimant to do home exercises and stretches. *Id.*

The treatment record provides supporting evidence that the ALJ's finding was appropriate. Dr. Bolz is the only medical expert to opine that Claimant can stand and walk for a total of two hours. As noted by the ALJ, this opinion is inconsistent with the remainder of the treatment record, which notes either normal or almost normal medical exams, without the need for an ambulatory aid or the need to limit the time Claimant spends walking or standing. (ECF No.14, PageID #: 416, 436–37, 460, 463–64, 487, 493, 495, 497–99). Therefore, it was appropriate that the ALJ to "chose to adopt the State Agency Medical doctor's opinion upon initial review, and reject the State Agency Medical doctor's opinion upon Claimant's reconsideration," (ECF No. 15, PageID #: 530) since the opinion upon reconsideration noted a limitation that was inconsistent with the remainder of the treatment record.

### 2. The Claimant Did Not Provide Sufficient Evidence to Prove that the Cane was Medically Necessary

In Claimant's second assignment of error, he argues that the ALJ failed to properly apply SSR 96-9p when a single physician within the treatment record noted that "[Claimant] uses the cane to ambulate." (ECF No. 15, PageID #: 530). Specifically, Claimant states:

> [] As cited above, SSR 96-9p has two basic requirements for determining medical necessity of an assistive device: 1) medical documentation establishing the need for a (cane); and 2) a statement about when/how the cane is needed. The ruling says nothing about the need for a prescription. The ALJ's insertion of that requirement goes above and beyond what a claimant is required to show.

15

> [] Dr. Yoo clearly states that he uses the cane to ambulate. When describing Mr. Wilson's gate, Dr. Yoo notes that he uses a cane to ambulate. This record from a neurologist should be self-explanatory that a cane is medically necessary. Further, Dr. Yoo's description of when/how Mr. Wilson uses it satisfies the second prong.
>
> It is clear from the record that Dr. Bolz gave credence to the need for a cane. Only by injecting the requirement of a prescription was the ALJ able to discount Dr. Bolz's opinion and revert back to the Light RFC given at the initial application. []

(ECF No. 15, PageID #: 530–31).[4]

Claimant refers to Dr. Yoo's medical notes but does not appropriately represent Dr. Yoo's notations. During a single visit, Dr. Yoo mentions Claimant's use of his cane three times. (ECF No. 14, PageID #: 436–37). First, Dr. Yoo made the subjective note that "[Claimant] started using a cane for this pain with exacerbation of pain one month ago," and then, during the physical exam, Dr. Yoo made the objective note that Claimant "uses a cane to ambulate." *Id.* The overall impression of the treating physician was that Claimant "has been using a cane." *Id.* Dr. Yoo did not recommend using a cane within his note to Claimant. *Id.* Claimant credits Dr. Yoo's notation that "Claimant uses a cane to ambulate" (ECF No. 14, Page ID #: 436) as the reason why State Agency medical consultant, Dr. Bolz, opined that Claimant had the exertional limitation to stand or walk for a total of two hours. (ECF No. 15, PageID #: 529). Nevertheless, Dr. Yoo did not include a recommendation that Claimant should limit the time spent standing or walking, nor did Dr. Yoo provide the conditions for which an ambulatory aid was medically required. (ECF No. 14, PageID #: 437).

---

[4] Claimant inaccurately summarizes the ALJ's findings. The ALJ included additional facts to show that Dr. Bolz's opinion was insufficient. In addition to the lack of a prescription, the ALJ included Claimant's degenerative disc disease classification and the claimant's past treatment and refusals of treatment to support her conclusion. (ECF No. 14, PageID #: 89).

Here, the ALJ found that Claimant failed to fulfil his burden under SSR 96-9p to produce evidence that his use of a cane in the workplace was medically necessary. (ECF No. 14, PageID #: 89). Social Security Ruling 96-9p addresses the use of an assistive device in determining RFC and the vocational implications of such devices:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.[] For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

*Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996), 1996 WL 374185 (footnote omitted).

The Court finds that the ALJ applied the proper legal standards in the instant case and substantial evidence supports her determination that the medical evidence of record did not establish that a cane was medically required. In her decision, the ALJ acknowledged Claimant's use of assistive devices and found the following:

> A later State Agency medical consultant, Dr. William Bolz, M.D. opined in July 2017 that the claimant was capable of work at the sedentary exertional level due to only being able to stand or walk for 2 hours. The claimant would also have postural limitations. (Exhibits 5A and 6A). The [ALJ] finds this opinion unpersuasive because there is insufficient evidence in the medical record to support a limitation to the sedentary level. There is only one reference in the record that the claimant uses a cane, and there is not a prescription for the use of the cane anywhere in the medical record to show that it was medically necessary. In addition, the claimant's degenerative disc disease is classified as mild to moderate, he declined treatment from his doctor in July 2018, and he has only had one steroid injection. (Exhibit 9F).

(ECF No. 14, PageID #: 89).

Here, Claimant testified during the oral hearing that he was prescribed a cane by his physician. (ECF No. 14, PageID #: 143). However, the ALJ found there was not a prescription for the cane. (ECF No. 14, PageID #: 89). Although a prescription is not required for a cane to be medically necessary, SSR 96–9p requires medical documentation of the need for the assistive device, not just notations relating to a claimant's continued use of an assistive device. *See Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394, at *12 (N.D. Ohio June 8, 2017) ("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to

18

establish that the cane was medically required. Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.").

Claimant points to two instances where a single treating physician includes a statement about Claimant's use of a cane. (ECF No. 15, PageID #: 529). Nonetheless, these records do not establish the cane was medically required. *Id.* During a physical examination, Dr. Yoo notes that Claimant was "[using] a cane to ambulate." (ECF No. 14, PageID #: 436). However, Dr. Yoo's note does not constitute the medical documentation required by SSR 96–9p. Dr. Yoo did not affirm that the cane was medically required, nor did Dr. Yoo identify any circumstances under which it was needed. *See Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018) (holding that the ALJ correctly applied 96-9p in finding that the use of a cane was not medically necessary, even after Claimant's treating physician "encouraged [Claimant] to use his cane regularly"). Furthermore, Dr. Yoo recommended that Claimant should "try to return to full daily activities." (ECF No. 14, PageID #: 437). Accordingly, the ALJ correctly applied SSR 96–9p in finding that the cane was not medically necessary (ECF No. 14, Page ID #:89) and substantial evidence supports that determination.

The Court finds that the ALJ applied the proper legal standards and, as discussed above, substantial evidence supports her decision to find the later State Agency's medical opinion unpersuasive. "While substantial evidence may exist to the contrary, the decision of the ALJ is supported by [her] review of the medical evidence which failed to contain documentation of the medical necessity for the cane [], and failed to provide a description of the circumstances for which [a cane was] needed, such as whether [one was] needed all of the time, sometimes, in certain situations, for certain distances, or on certain terrains, or any other information." *Perry*, 2018 WL 1393275, at *5 (citing SSR 96–9p).

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Claimant's Statement of Errors be OVERRULED and the Commissioner's decision be AFFIRMED.

DATED: July 9, 2021

      *Carmen E. Henderson*
      Carmen E. Henderson
      United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).